THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVEN SPEED, Defendant-Appellant.

Second District    No. 81-75

Opinion filed June 2, 1982.

Mary Robinson and David Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (Phyllis J. Perko and Gene Armentrout, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

In a jury trial, Steven Speed was convicted of the offense of unlawful possession of more than 30 and less than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)) and sentenced to 18 months' probation, 90 days to be served in the county jail. He appeals, contending that the affidavit for a search warrant failed to support a finding of probable cause; he was not proved guilty of the felony beyond a reasonable doubt; the giving of an unconstitutional instruction inferring guilt from control of the premises, and closing arguments of counsel, comprised prejudicial errors; and he was denied effective assistance of counsel.

I

The affidavit relied upon for the issuance of the search warrant stated:

"The affiant, Captain Melvin Messer, being an Ogle County Deputy Sheriff and a peace officer of the state of Illinois.

The affiant on April 23, 1980 talked with a confidential source whose information in the past has led to the arrest and convictions of at least 10 persons for violations of the Cannabis Control Act and the Controlled Substance Act. His information also led to the arrest and conviction of at least 4 persons for Burglary. And has made at least 12 controlled buys and has supplied other intelligence information which has been proven factual. The affiant has known the confidential source since 1969. On April 23, 1980, the affiant was told by the confidential source that he had been at the Steven Speed residence at Hemstock and Center Road and had observed a large quantity of drugs, namely cannabis and other controlled substances. His exact words were 'the house looks like a drug store.' Confidential source went on to say that Speed has been and had been arrested in March 1979. The affiant checked with the Chief of Police of Rochelle Police Department who advised the affiant that on March 15, 1979 Speed was arrested for Possession of Cannabis and Possession of Controlled Substances. The Chief of Police advised the affiant that he had personally observed drug sales taking place from his vehicle in the Pour House parking lot in Rochelle, Illinois and the subsequent arrest led to the confiscation of his vehicle by court order through a plea bargain with the States Attorneys office on the charges that were placed against him. The confidential source then told the affiant that within the past 3 days he had a conversation with Steven Speed where Speed stated, when asked if he had any Cannabis for sale stated that he did not

want to deal in town because the heat is on. The confidential source had used Cannabis in the past and knows what it looks like and the effects of it when it is used and is able to identify it on sight."

The defendant argues that the affidavit is insufficient because it fails to allege the date when the confidential informant saw the contraband within defendant's home or to furnish any reasonable inference of the recency of the observation. The State argues that we can infer that the contact between the informant and the defendant, and the informant's observation of the house, occurred within 3 days prior to April 23, 1980; moreover, that the issue has been waived by failure to move to suppress the search warrant and by failure to include the objection in a post-trial motion.

■■■ Generally, reviewing courts will not consider the question of illegal search and seizure where it is not raised before the trial court (*People v. Johnson* (1967), 38 Ill. 2d 399, 402; *People v. Harris* (1965), 33 Ill. 2d 389, 390.) The plain error rule (73 Ill. 2d R. 615(a)) does not require a reviewing court to consider all errors involving constitutional or other substantial rights unless it is "plainly apparent" that the error involves a serious injustice to a defendant; which includes consideration of the closeness of the evidence on the possibility that an innocent person may have been convicted as a result of the error. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359-60.) In addition, a court of review may consider issues not properly preserved if the errors deny the accused a fair and impartial trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77.) It has been noted that in the great majority of cases in which fourth amendment claims of illegal search and seizure are not raised in the trial court, reviewing courts refuse to consider them because, even assuming the validity of the claims, the fact remains that a defendant has been convicted "upon probative evidence at a trial which was not infected with unfairness." (3 W. LaFave, Search and Seizure sec. 11.7, at 734 (1978).) And the further reason has been stated that the plain error rule should not be used to reach fourth amendment claims as it would penalize the prosecution, which might not introduce other evidence of probable cause for a search when defendant's failure to raise an objection before or during trial seemed to make such showing unnecessary. (3 W. LaFave, Search and Seizure sec. 11.7, at 734-35 (1978).) There has also been a mounting recognition that "unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." See *United States v. Payner* (1980), 447 U.S. 727, 734, 65 L. Ed. 2d 468, 476, 100 S. Ct. 2439, 2445-46.

■■ Here the evidence seized was, in fact, trustworthy. There is also no showing that the State, if it had been alerted to the deficiencies in the

affidavit, could not have introduced more detailed testimony to make a showing of probable cause based other than upon the affidavit. (See *People v. Edwards* (1976), 35 Ill. App. 3d 807, 809.) These factors militate strongly against our use here of the plain error rule as an exception to the rule of waiver. We conclude that the issue has been waived.

The defendant has included this issue, with other asserted errors, under the claim of incompetency of trial counsel as the basis for our not enforcing the waiver rule. Although we have stated we do not reach the merits of the question as plain error, we allude to the affidavit in determining whether defendant's defense counsel has been incompetent in not moving to suppress or to raise the illegality of the search and seizure in the trial court.

While the affidavit does not clearly establish the date when the informant sighted contraband in the defendant's residence, it is not "so clear as to admit of only the conclusion" that the motion would have been successful. (See *People v. Henry* (1982), 103 Ill. App. 3d 1143, 1146-47.) We do not decide the sufficiency of the affidavit on its merits, but several considerations bear on the uncertainty of the result had there been a timely motion to suppress. The affidavit discloses the police talked to the informant within "the past 3 days." The currency of the police contact with the informant was thus established. A search warrant has been held to have issued on probable cause where an affidavit has stated that information has been "just received," as supporting the inference that the informant had been at the residence of the defendant on the same day. (*People v. Mayes* (1977), 78 Mich. App. 618, 622-23, 261 N.W.2d 22, 25.) And see *State v. Partin* (1977), 88 Wash. 2d 899, 567 P.2d 1136, 1139 (affidavit reciting that information had been "just received" on day warrant issued held sufficient). But see 1 W. LaFave, Search and Seizure sec. 3.7, at 693 n.52 (1978).

From the fact that defendant is alleged to have said "he did not want to deal in town because the heat is on," the reasonable inference might be drawn that defendant still had contraband, although he intended to limit the location of his sales. The currency of the information could be fortified by the statement in the present tense that "the house looks like a drug store." In the context of a crime which is continuing in nature a statement in the present tense takes on more significance. The majority view, particularly where a crime is of a continuing nature, is that use of the present tense may establish that the facts are sufficiently timely to amount to probable cause to search. See Annot., 100 A.L.R.2d 525, 533-34 (1965 and later supplements); but see 1 W. LaFave, Search and Seizure sec. 3.7, at 696-97.

*People v. Holmes* (1974), 20 Ill. App. 3d 167, is cited by the defendant for its holding that the "present tense" argument should be rejected (20 Ill.

App. 3d 167, 170); but note that *Holmes* and the case upon which it relied, *Rosencranz v. United States* (1st Cir. 1966), 356 F.2d 310, involved crimes which were not continuing in nature, with no reasonably specific clues to the time of their happening, and that in *Holmes* and *Rosencranz* the defective affidavits failed to provide the date when the information was received; here, the affidavits positively stated that the information relied upon by the State was received within the past three days.

We use the cited cases merely as illustrations of the fact that it is not clear that counsel would have been successful in pursuing the motion to suppress; or that the failure to make the motion demonstrated actual incompetence resulting in substantial prejudice without which the outcome would probably have been different. See, *e.g., People v. Lewis* (1981), 88 Ill. 2d 129, 153-55.

## II

We agree with the defendant's contention that he was not convicted of the Class 4 felony charged, unlawful possession of more than 30 grams of a substance containing cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)), beyond a reasonable doubt.

Thomas Hughes, a forensic scientist for the Illinois Department of Law Enforcement, testified for the State as an expert. He said he weighed the substance on a scale, which he described as accurate to within 1/100th of a gram, and found a total weight of 28.8 grams. After a field test in which he concluded that the plant material was cannabis he found that the substance then weighed 28.7 grams.

Officer Messer also testified for the State that he and another officer, Chief Brass, took it to "Gleichman's Drug Store" to weigh it since the Rochelle police station lacked a gram scale. He testified that the proprietor showed him how to use the scale, he noted that it was an "electric gram scale," that it used a counterbalance to achieve zero weight; that he calculated that, subtracting the weight of the three bags, which from his experience he concluded weighed 1 gram each, the weight was 35 grams. Chief Brass, however, testified that the pharmacist did the weighing and told the officers that the substance weighed 38 grams.

■■■ The State argues that where the testimony of witnesses is merely conflicting, reviewing courts will not set aside the verdict of a jury since they are the judges of credibility of witnesses, unless the evidence is so improbable as to raise a reasonable doubt of guilt. The State relies on *People v. Yarbrough* (1977), 67 Ill. 2d 222, 226, and *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, both of which state the general rule. We find neither case apposite on the facts. Here, the issue is not whether competent evidence was conflicting, but whether the testimony of the officers was competent proof beyond a reasonable doubt which the jury could, in the

exercise of its proper function, choose over the testimony of the State's expert. Messer's testimony that it was necessary for an employee of the pharmacy to show him how to use the pharmacy scale indicates itself a lack of personal skill; there was no testimony as to the accuracy of the scale or that Messer used it properly; and Messer merely estimated the weight of the bags, stating that "generally" they weigh 1 gram each. Chief Brass' testimony cast doubt on the statement of Messer when he said that Messer in fact did not weigh the substance but rather the pharmacist did and "reported" that the weight was 38 grams. In contrast, the State's expert, shown to be highly experienced and qualified, testified that the weight of the substance was 28.8 grams on a scale which was stated to be accurate within 1/100th of a gram. The State has the burden of establishing the essential elements of the crime beyond a reasonable doubt. (*People v. Sanford* (1962), 24 Ill. 2d 365, 368.) The foundation for Officer Messer's testimony concerning the weight of the substance was not sufficiently proved in absence of testimony that verified the accuracy of the scale. (See *People v. Rhoades* (1979), 74 Ill. App. 3d 247, 253.) Brass' contradictory testimony merely introduces the hearsay "report" of. the pharmacist if he were the one who actually weighed the substance. On the whole record we conclude that the testimony as to the element of weight presented by Officers Messer and Brass was so unsatisfactory and improbable as to raise a reasonable doubt of the guilt of possession of more than 30 grams of the substance; thus, the felony conviction cannot stand. However, the proof shows that defendant was guilty beyond a reasonable doubt of the misdemeanor of possession of less than 30 grams of a substance containing cannabis. The degree of the offense is, therefore, reduced to the Class A misdemeanor. Ill. Rev. Stat. 1979, ch. 56½, par. 704(c). See also *People v. Robinson* (1981), 92 Ill. App. 3d 397, 400; *People v. Baes* (1981), 94 Ill. App. 3d 741, 744.

The defendant, alternatively arguing that he is entitled to a new trial, contends first that a non-IPI instruction was given as tendered by the State and constituted prejudicial error. He contends that the instruction

> "Where contraband is found on premises possessed by and under control of defendant, such facts gives [*sic*] rise to inference that he had knowledge and possession of the contraband, which in turn is sufficient to sustain conviction for possession of the contraband, absent other facts and circumstances giving rise to a reasonable doubt"

is a mandatory one which tells the jury that proof of the finding of contraband on premises under the control of the defendant, even without proof that the contraband was in the possession of the defendant or there with his knowledge, is sufficient to convict; and that the last clause in the instruction "absent other facts and circumstances giving rise to reasonable

doubt" could have been construed by the jury as not applying to possession and knowledge, thus changing the burden of proof and depriving the defendant of the presumption of innocence. The State contends that the language in the instruction was permissive and basically told the jury that possession and control of the premises was an important fact but not determinative, if they found "other facts and circumstances" gave rise to a reasonable doubt.

■■ Instructions which require rather than permit jurors to presume guilt from given facts are invalid unless the connection between the evidentiary or basic fact and the elemental fact is accurate "in the run of cases." (*County Court v. Allen* (1979), 442 U.S. 140, 159, 60 L. Ed. 2d 777, 793, 99 S. Ct. 2213, 2226. See also *Sandstrom v. Montana* (1979), 442 U.S. 510, 526, 61 L. Ed. 2d 39, 52, 99 S. Ct. 2450, 2460; *United States v. Romano* (1965), 382 U.S. 136, 139-40, 15 L. Ed. 2d 210, 212-13, 86 S. Ct. 279, 281-82; *People v. Housby* (1981), 84 Ill. 2d 415, 424-25.) However, an instruction which makes it clear that a presumption is merely part of the State's case giving rise to a permissive inference and which allows the jury to consider all the circumstances to support or contradict the inference, is constitutionally valid. *County Court v. Allen* (1979), 442 U.S. 140, 160-62, 60 L. Ed. 2d 777, 794-95, 99 S. Ct. 2213, 2226-27.

In *Sandstrom v. Montana*, an instruction to the effect that the law "presumes that a person intends the ordinary consequences of his voluntary acts" was struck down as mandating a conclusive presumption on the issue of intent, thus relieving the State of its duty to prove every element of the offense beyond a reasonable doubt. In *People v. Housby*, the instruction provided that if the defendant has exclusive possession of recently stolen property and there was no reasonable explanation of his possession "you may infer" that he obtained possession by burglary, was upheld by the Illinois Supreme Court. *Sandstrom* was distinguished by the fact that the use of "may" in *Housby* rather than "[t]he law presumes" which was struck down in *Sandstrom* was sufficient to advise the jury that the inference with which they were dealing was permissive and that they were free to decide whether to make use of it in judging Housby's guilt. (*People v. Housby* (1981), 84 Ill. 2d 415, 432-33.) In *People v. Nettles* (1961), 23 Ill. 2d 306, the Illinois Supreme Court stated:

> "We are of the opinion, therefore, that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, *gives rise to an inference* of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, *absent other facts and circumstances* \* \* \*." (Emphasis added.) (23 Ill. 2d 306, 308-09.)

In *People v. Lewis* (1981), 88 Ill. 2d 129, 163, the Illinois Supreme Court upheld an instruction that stated that if defendant had exclusive posses-

sion of recently stolen property and there was no reasonable explanation of the possession "you may infer" that he obtained possession by armed robbery. The court held the instruction was clearly permissive and that when read together with the rest of the instructions it was clear that no rational jury could interpret the words "you may infer" to indicate that possession of stolen goods alone proved armed robbery or that it was an irrebuttable direction or that it shifted the burden of proof. 88 Ill. 2d 129, 163-64.

The non-IPI instruction which was tendered in this case was substantially a restatement of the quoted paragraph from *Nettles*. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09.) In fact, defense counsel first objected to this instruction and then withdrew his objection on the basis of *Nettles*. (23 Ill. 2d 306, 308-09.) The fact that the instruction in this case uses the phrase "gives rise to an inference" rather than the phrase "you may infer" approved in *People v. Housby* (1981), 84 Ill. 2d 415, 433, and in *People v. Lewis* (1981), 88 Ill. 2d 129, 163, appears to us to make no significant difference as far as the understanding of a reasonable juror is concerned. The jurors were also informed that they were not to single out particular instructions, were to act as judges of the facts and should consider all the evidence in light of their own observations and experience, that the State must prove that the defendant "knowingly" had in his possession a substance containing cannabis, that defendant was presumed innocent of the charges and that this presumption remained throughout every stage of the trial and during deliberation and was not overcome "unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty," that the State had the burden of proving guilt beyond a reasonable doubt and the burden remained on the State throughout the case and the defendant was not required to prove his innocence. Similar instructions referred to in *Housby* were given significance as assuring that the jury would not misunderstand the permissive nature of the inference instruction. *People v. Housby* (1981), 84 Ill. 2d 415, 434.

■■ We do not approve the particular instruction given as a model of clarity. All doubt could have been avoided by an instruction which told the jury that it was free to credit or reject the inference suggested to it on the basis of the evidence. However, we do not find the instruction invalid as either resulting in an unconstitutional presumption or as changing the burden of proof.

### III

■■ The defendant also argues that he is entitled to a new trial because of what he claims are reversible errors arising from the prosecutor's closing argument. In one instance the prosecutor argued that "when a person is

arrested he is advised of his rights, it begins with the right to remain silent." The defense counsel's objection was sustained, as the prosecutor continued: "Mr. Speed did not say anything to the police." Again defense counsel objected, noting that there was no evidence defendant had been given *Miranda* warnings. The judge cautioned the prosecutor at a bench conference, and the argument continued on another tack.

■■ Unquestionably the direct reference to defendant's post-arrest silence was error. (*Doyle v. Ohio* (1976), 426 U.S. 610, 634-36, 49 L. Ed. 2d 91, 106-07, 96 S. Ct. 2240, 2252-53; *People v. Beller* (1979), 74 Ill. 2d 514, 526. See also *People v. Lucas* (1981), 88 Ill. 2d 245, 254.) The real question is whether the error was harmless beyond a reasonable doubt. (See *People v. Beller* (1979), 74 Ill. 2d 514, 525-26.) We conclude that on the whole record it was.

In defense counsel's closing argument he commented:

> "It's also uncontroverted that no one, no police officer asked her at any time whether that was Steve Speed's cannabis or her cannabis. No one at any time asked Steve Speed whether that was his cannabis or her cannabis. Nobody asked either one of them at any time if part of it was hers and part of it was his. There is just absolutely no testimony."

The prosecutor's comment in rebuttal argument, although an impermissible comment under *Doyle v. Ohio,* appears to be an explanation of why the police did not ask Speed whether it was his cannabis or Miss Wright's or partly his and partly hers. An argument that certain inferences can be drawn from post-arrest silence invites response. *People v. White* (1980), 88 Ill. App. 3d 788, 792.

Defendant's argument that defense counsel did not refer to defendant's silence so that the prosecutor's comment could not have been characterized as an invited response is not persuasive. The comment by defense counsel that no one asked defendant or Miss Wright whose cannabis it was creates the positive inference in the mind of the jury that the officers could have done so, when as a practical matter such answers could not have been pursued without *Miranda* warnings. *Doyle v. Ohio* does not give a defendant the right to falsely create an impression that the police could have determined who the possessor was by questioning, and then prevent the State from rebutting the inference so created. See *United States v. Dixon* (5th Cir. 1979), 593 F.2d 626, 630.

Moreover, the single reference indicates that the comment on defendant's silence was not for substantive purposes or for impeachment of the theory of the defense, thus that the harmless error doctrine may be applied. (*United States v. Dixon* (5th Cir. 1979), 593 F.2d 626, 630.) Compare *Chapman v. State of California* (1967), 386 U.S. 18, 25, 17 L. Ed. 2d 705, 711, 87 S. Ct. 824, 829, where the jury was "continuously and re-

peatedly impressed" that from the defendant's failure to testify the inferences from the evidence had to be drawn in favor of the State; *Doyle v. Ohio* (1976), 426 U.S. 610, 613-17, 49 L. Ed. 2d 91, 95-97, 96 S. Ct. 2240, 2242-44, where there was extensive cross-examination on the subject of silence; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 287, where there were "repeated references" to a privileged statement made to counsel: and *People v. Adams* (1981), 102 Ill. App. 3d 1129, 1133, where the prosecutor commented "at some length" on defendant's silence when arrested, and strongly suggested that the defense of self-defense was fabricated because defendant would have otherwise told the officers that she so acted when she was arrested.

Moreover, the evidence that defendant was the possessor of the contraband was not closely balanced. It was found in a drawer in the buffet in the living room and on a tray in the bedroom in defendant's apartment; and defendant's act of breaking a glass smoking pipe when the officer began the search created the further inference of his knowledge and possession. The issue was not raised in a post-trial motion although the objection had been made at trial. Under the circumstances we do not find plain error. *People v. Lucas* (1981), 88 Ill. 2d 245, 251.

■■ We also find no prejudicial error in the prosecutor's comment that defense counsel could have called Miss Wright as a witness. This was an invited response to defense counsel's argument that the State could have called this witness. (See *People v. McElroy* (1980), 81 Ill. App. 3d 1067, 1073-74.) Defendant's further argument that he could not call Miss Wright because she would have invoked her privilege against self-incrimination is speculation which is not supported by the record. There is nothing to indicate that if called she would invoke the privilege (*cf. People v. Cvetich* (1979), 73 Ill. App. 3d 580, 584), or had already done so. See *People v. Myers* (1966), 35 Ill. 2d 311, 334.

## IV

■■ ■ Defendant's contention that he was deprived of the effective assistance of counsel has been partially responded to in connection with the issue of the alleged defect in the search warrant. Defendant has also contended that the failure to move for a directed verdict on the felony charge, the withdrawal of objection to the "inference" instruction, and the failure to move to strike prosecutor's argument, the failure to preserve any of the allegations of error in a post-trial motion, in total shows incompetence of appointed counsel. The State argues that defense counsel properly focused on the major issues, the weight of the cannabis and the lack of evidence of possession, and thus was not incompetent. We agree. As we have previously noted, incompetence of counsel must be established by proof that substantial prejudice results from counsel's performance

"without which the outcome would probably have been different." (*People v. Carlson* (1980), 79 Ill. 2d 564, 584-85; *People v. Lewis* (1981), 88 Ill. 2d 129, 153-58.) On the whole record we consider that defense counsel was not shown to be incompetent.

The conviction and sentence for the Class 4 felony, possession of a substance containing cannabis over 30 grams, are vacated; conviction of defendant of the possession of a substance containing cannabis of more than 10 and less than 30 grams is entered. The case is remanded for resentencing of the defendant based upon the modified conviction.

Conviction modified in part and remanded for resentencing.

NASH and HOPF, JJ., concur.